# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:  )
        )  **JUDGE RICHARD L. SPEER**
Paul D. and Vee Ann Briggs )
        )  Case No. 10-32375
   Debtor(s) )
        )
        )

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). (Doc. No. 12). The Debtors filed a response to the Motion, objecting to the Dismissal of their case. (Doc. No. 19). A Hearing was then held on the matter. (Doc. No. 20).

At the conclusion of the Hearing, the Court deferred ruling on the Motion to Dismiss so as to afford the Parties the opportunity to address a legal issue raised at the Hearing. The Parties have since filed timely briefs with the Court in support of their respective positions. The Court has now had the opportunity to review all of the arguments and evidence submitted in this case, and finds, for the reasons now explained, that the Motion of the United States Trustee to Dismiss has Merit.

## BACKGROUND

On April 9, 2010, the Debtors, Paul D. and Vee Ann Briggs, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). In the schedules they filed with their petition, the Debtors disclosed that they had $44,774.00 in unsecured debt, consisting entirely of credit-card obligations. The Debtors did not disclose the existence of any dependents.

At the time they filed their petition, the Debtors also, as required by the Bankruptcy Rules, submitted an Official Form B22A, entitled "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation." This form implements the requirement of § 707(b)(2)(C), requiring a

**In re: Paul D. and Vee Ann Briggs**
**Case No. 10-32375**

debtor to perform the 'means test' calculation of § 707(b)(2) so as to determine if granting relief in the case should be presumed to be an abuse.

In completing Form B22A, the Debtors represented that they were Ohio residents and had a combined gross annual income of $25,708.80. Based upon these facts, the Debtors determined that, according to the 'means test' formula of § 707(b)(2), no presumption of abuse arose in their case because their income fell below the median state income for a like-size household. This result was reached because only debtors with income above the state median income are subject to the 'means test' calculation of § 707(b)(2),[1] and at the time the Debtors sought bankruptcy relief, the median income for a family of two in Ohio was $52,030.00.[2]

However, not included in the Debtors' 'means test' calculation was income received by the Debtor, Paul D. Briggs, from a state pension. This income from Mr. Briggs' state pension totals $32,686.06 per year, or $2,724.00 per month. (Doc. No. 3). If this income is then used in performing the 'means test' calculation of § 707(b)(2), not only does the Debtors' gross annual income fall above the state median income, but the § 707(b)(2) formulation yields a result showing that the granting of relief in the Debtors' Chapter 7 bankruptcy case should be deemed to be presumptively abusive for purposes of § 707(b)(2).

Even setting the 'means test' of § 707(b)(2) aside, when Mr. Briggs' income is included in their budgetary figures, the Debtors show that they have $500.00 to $600.00 in disposable income available every month to repay their unsecured debt. This fact makes the Debtors' bankruptcy case ripe for dismissal under the alternative basis set forth in the Motion filed by the UST: The "totality of the circumstances" standard contained in § 707(b)(3)(B), with the Debtors having the ability, under a five-year Chapter 13 plan, to fully repay their unsecured creditors. To this end, this Court,

---

[1] 11 U.S.C. § 707(b)(7)(A).

[2] http://www.justice.gov/ust/eo/bapcpa/20100315/bci_data/median_income_table.htm.

Page 2

in addressing § 707(b)(3), recently remarked: "a debtor with an ability to repay 100% of their unsecured obligations through a Chapter 13 plan will necessarily find it very difficult to justify their need for relief under Chapter 7 of the Bankruptcy Code." *In re Kunkelman*, 417 B.R. 489, 494 (Bankr. N.D.Ohio 2009).

Whether under § 707(b)(2) or § 707(b)(3), the Debtors do not contest that their combined incomes allow for the satisfaction of their unsecured debts with relative ease. Notwithstanding, the Debtors take the position that their Chapter 7 case should be allowed to proceed for the reason that the pension income of Mr. Briggs is an exempt asset and, given this character, cannot be considered when assessing whether to dismiss their case under §707(b). In the words of the Debtors, the income of Mr. Briggs, "being exempt from attachment by any of his creditors, should not be included in the Means Test as they are not funds which are available for payment to any of his creditors." (Doc. No. 25, at pg. 2). The UST demurred, taking the position that, in assessing whether to dismiss a case under § 707(b), a debtor's income, even if exempt, must be considered. (Doc. No. 26).

## DISCUSSION

Before this Court is the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

Based upon the positions taken by the Parties, a single issue has been placed before the Court for adjudication: For purposes of § 707(b), may a debtor's exempt income be considered when assessing whether to dismiss a case for abuse?

An exemption is a right, usually afforded by statute, which allows a debtor to shield certain property from the claims of creditors. *In re Flynn*, 238 B.R. 742, 744 (Bankr. N.D.Ohio 1999). When

In re: Paul D. and Vee Ann Briggs
Case No. 10-32375

Congress enacted the Bankruptcy Code, it preserved a debtor's right to claim his or her interest in certain property as exempt. 11 U.S.C. § 522. In bankruptcy, the effect of a properly claimed exemption is to place that interest outside the scope of property available to the trustee for liquidation and distribution to a debtor's creditors. *In re Farr*, 278 B.R. 171, 177 (B.A.P. 9th Cir. 2002). The purpose of recognizing exemptions in bankruptcy is straightforward: An exemption serves to further the Bankruptcy Code's fresh-start goal. *In re Toland*, 346 B.R. 444, 446 (Bankr.N.D.Ohio 2006).

However, while bankruptcy law is grounded on the fresh-start concept, there is no right to use the bankruptcy process to gain a head start. *In re Zick*, 931 F.2d 1124, 1129-30 (6th Cir. 1991), *citing In re Jones*, 114 B.R. 917 (Bankr. N.D.Ohio 1990). The enactment of § 707(b) in 1994, as well as later amendments made to the statute in 2005 were directly aimed at this concern. Specifically, § 707(b) seeks to prevent debtors, with the ability to repay their debts, from using Chapter 7 of the Bankruptcy Code to escape their legal obligations. *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989).

The issue before the Court, thus, places at odds two competing bankruptcy principles: the Bankruptcy Code's interest in providing a debtor with a fresh-start and the Bankruptcy Code's interest in seeing that, where a debtor has the ability to repay their debts, they do so. In such a situation, the Court's analysis must necessarily start with construing the applicable provisions under which the UST brings its Motion to Dismiss. *See, e.g., Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 557-8, 110 S.Ct. 2126, 2130-31, 109 L.Ed.2d 588 (1990) (construction of terms in the Bankruptcy Code "is guided by the fundamental canon that statutory interpretation begins with the language of the statute itself."). As the Supreme Court of the United States stated in a case construing the Bankruptcy Code, the "starting point in every case involving construction of a statute is the language itself." *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986).

Page 4

In re: Paul D. and Vee Ann Briggs
Case No. 10-32375

The Motion of the United States Trustee to Dismiss is brought pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). These sections operate together, with § 707(b)(1) first setting forth the foundational mandate, providing that, where the granting of relief under Chapter 7 would be an abuse, the debtor's case is to be dismissed. Sections 707(b)(2) and 707(b)(3) then set forth separate methodologies by which a determination of abuse is to be assessed under § 707(b)(1).

Yet, whether looking at § 707(b)(1), § 707(b)(2) or § 707(b)(3), the position put forth by the Debtors does not find support in any of these provisions, with all these provisions lacking any explicit reference to a debtor's right to claim an exemption. Of importance, none of these provisions reference § 522, the provision of the Bankruptcy Code governing exemptions. This omission is particularly significant considering that numerous provisions of the Code explicitly reference § 522. *See, e.g.*, 11 U.S.C. § 521 relating to a debtor's duties); 11 U.S.C. § 542 (concerning turnover of property to the estate), and 11 U.S.C. § 722 (providing for the redemption of tangible personal property from a lien securing a dischargeable consumer debt). Ergo, had Congress intended for exempt income to be excluded from a § 707(b) analysis, it could have easily provided for such an outcome. In fact, it is noted that Congress specifically excluded from any § 707(b)(1) analysis a particular area of a debtor's budget, providing that "the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions . . . ."

Moreover, declining to read into § 707(b) an implicit exclusion for exempt income conforms to the approach adopted by the Sixth Circuit in a similar situation. In the case of *Freeman v. Schulman (In re Freeman)*, it was held:

> The plain language of [§ 1325] makes no express or implied reference to the exempt status of income under state law . . . . 'Disposable income' under section 1325 is to be interpreted broadly . . . . In this case, as a factual matter, the debtor had specifically identified that tax refunds should go to the plan and made no argument that the funds were needed for 'maintenance and support' of the debtor or her dependents. The income therefore qualifies as 'projected disposable income' under section 1325.

Page 5

In re: Paul D. and Vee Ann Briggs
Case No. 10-32375

*Freeman v. Schulman (In re Freeman)*, 86 F.3d 478, 480-81 (6th Cir.1996). Other courts have generally come to the same conclusion, declining to exclude a debtor's exempt income from the scope of a § 707(b) inquiry.[3]

However, what the Court finds ultimately fatal to the Debtor's position is the definition of income as it applies to § 707(b)(2). The 'means test' formulation of § 707(b)(2) requires that its calculation be based on a debtor's "current monthly income." For purposes of § 707(b)(2), a debtor's "current monthly income" is specifically defined by the Bankruptcy Code as follows:

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on–
>
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
> >
> > (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and

---

[3] *In re Shields*, 322 B.R. 894, 898 (Bankr.M.D.Fla.2005) (Exempt social security benefits, disability benefits, and retirement benefits are properly considered for purposes of § 707(b)); *In re Rogers*, 168 B.R. 806, 808 (Bankr.M.D.Ga.1993) (exempt naval retirement benefits had to be included in "disposable income," in determining whether substantial abuse existed justifying dismissal of Chapter 7 case). See also *In re Taylor*, 212 F.3d 395 (8th Cir. 2000) ("The fact that a pension is exempt from the reach of creditors does not preclude a bankruptcy court from finding that the pension is also disposable income for purposes of Chapter 13.").

Page 6

In re: Paul D. and Vee Ann Briggs
Case No. 10-32375

> payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

11 U.S.C. § 101(10A).

In sum, "current monthly income" means the average monthly income of the debtor received from all sources over the six-month period preceding the filing of the schedule of current income required by § 521(a). Exceptions are then made for three categories of income: (1) benefits received under the Social Security Act; (2) payments made to victims of war crimes or crimes against humanity; and (3) payments made to victims of terrorism.

The pension income received by Mr. Briggs must necessarily fall within the ambit of the definition of "current monthly income" as set forth in § 101(10A). First, pursuant to the above definition, "current monthly income" is specifically defined so as to include income received by a debtor "from *all* sources." (emphasis added). All can only be taken to mean all, exempt income or not. *See Foreman v. J. Walter Constr. Co.*, 378 B.R. 717, 721 (2007) ("'All' means all, that's all."). Furthermore, Mr. Briggs' pension income, received under a retirement scheme established by the state of Ohio, would not fall within the exception provided in § 101(10A)(B) as benefits received under the Social Security Act. Nor can it be contemplated that such income would qualify under either of the other two exclusions from "current monthly income," as payments made on account of war crimes or terrorism.

Also, given the exactitude of the definition of "current monthly income" as set forth in § 101(10A) – particularly, the provision's three exclusions – the Court is unwilling to carve out a judicially created exception. The reason for this was well encapsulated recently in the case of *Blausey v. U.S. Trustee*, 552 F.3d 1124 (9th Cir.2009) (per curiam). In *Blausey*, the issue before the Court was whether private disability insurance benefits were excluded from the scope of "current

Page 7

monthly income" under § 101(10A). The Court concluded that such payments were not excluded, reasoning:

> the statute specifically excludes certain payments, such as Social Security payments and payments to victims of war crimes and terrorism, from CMI. 11 U.S.C. § 101(10A)(B). The general rule of statutory construction is that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded. See 2A Sutherland Statutory Construction § 47:23 (discussing the rule of expressio unius est exclusio alterius). Here, the statute makes several specific exclusions from CMI but does not specifically exclude private disability insurance benefits. This indicates that Congress meant for the benefits to be included in CMI.

*Id.* at 1133.

For these reasons, the pension income received by Mr. Briggs must be included in the 'means test' formula of § 707(b)(2). Accordingly, as it was acknowledged that, with the inclusion of this income in the 'means test' calculation, a presumption of abuse arises in the Debtors' case, the Motion of the UST to dismiss under § 707(b)(1) and § 707(b)(2) has merit. However, even if not the case, the Debtors' case would still be ripe for dismissal in accordance with § 707(b)(3).

As an alternative methodology to dismissal under § 707(b)(2), it is provided in § 707(b)(3) that a finding of abuse may be predicated on the totality of the circumstances of the debtor's financial situation. 11 U.S.C. § 707(b)(3)(B).[4] Like § 707(b)(2), no express restriction is set forth in

---

[4] In relevant part, 11 U.S.C. § 707(b)(3)(B) provides that when "considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider . . . the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse."

Page 8

In re: Paul D. and Vee Ann Briggs
Case No. 10-32375

§ 707(b)(3) that a debtor's exempt income cannot be considered when assessing the existence of abuse. Moreover, in the absence of such a restriction, reading such a limitation into § 707(b)(3) would be the antithesis of a 'totality of the circumstances' inquiry which necessarily contemplates that all relevant circumstances be considered. *In re Gonzalez*, 378 B.R. 168, 174 (Bankr.N.D.Ohio 2007).

In this case, therefore, the pension of income of Mr. Briggs is relevant to § 707(b)(3)(B). Under this provision, a debtor's ability to pay their debts is an important and often dispositive component when assessing whether a debtor's case should be dismissed for abuse based upon the 'totality of the circumstances.' *In re Kunkelman*, 417 B.R. 489, 494 (Bankr. N.D.Ohio 2009). For this purpose, when Mr. Briggs' pension income is considered in conjuncture with the Debtors' total income, along with their necessary expenses and outstanding unsecured debt, there is no substantive reason to conclude that the Debtors cannot make an attempt to repay those debts they voluntarily incurred for consumer purchases. To this end, the Debtors did not seriously dispute the fact that they had $500.00 to $600.00 in disposable income available every month, thereby allowing them through a Chapter 13 plan of reorganization to make a significant, if not complete remuneration to their unsecured creditors who hold claims totaling approximately $45,000.00.

In summation, the pension income received by Mr. Briggs is not, on account of its character, excluded from consideration when assessing whether to dismiss the Debtors' bankruptcy case for abuse under § 707(b)(1). In addition, when this income is considered, whether for purposes of the methodology for a finding of abuse contained in § 707(b)(2) or § 707(b)(3), the Debtors' case becomes ripe for dismissal. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 9

In re: Paul D. and Vee Ann Briggs
Case No. 10-32375

Accordingly, it is

**ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3), be, and is hereby, GRANTED.

*IT IS FURTHER ORDERED* that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Monday, November 8, 2010, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

Dated: October 22, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 10

# CERTIFICATE OF SERVICE

Copies were mailed this 22nd day of September 2010 to:

Paul D Briggs
3628 West Alexis Rd.
Toledo, OH 43623

John L Jacobson
3450 W Central Ave #124
Toledo, OH 43606-4347

Vee Ann Briggs
3628 West Alexis Rd.
Toledo, OH 43623

John N Graham
5151 Monroe St #245
Toledo, OH 43623

Daniel M McDermott
201 Superior Ave. E. Suite 441
Cleveland, OH 44114

Scott R. Belhorn ust35
201 Superior Avenue East Suite 441
Cleveland, OH 44114-1240

/s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court